FREDERICKE SCHWEIGEL v. L. A. SHAKMAN COMPANY.

November 22, 1899.

Nos. 11,862—(167).

**Delivery of Deed—Presumption.**

The mother conveyed her land to her son. He then made a deed of a half interest in the land to his father, which was never recorded, and another deed of the whole land back to his mother, which was recorded

several months afterwards. The latter deed is dated 10 days later than the deed to the father. In an action by the mother against an attaching creditor of the father, *held*, it is presumed that each of these two deeds was delivered on the day of its date, and the oral evidence to prove the contrary is so inherently inconsistent and unreasonable that the trial court was warranted in holding that it did not overcome such presumption.

### Record in Foreign State—Certified Copy.

*Held*, a certified copy of a deed, recorded in the office of register of deeds of a county in another state, is competent to prove the date on which the deed was there recorded.

### Attachment—Unrecorded Deed—Proof of Debt.

*Held*, as the attaching creditor is not attempting to set aside any conveyance, but is simply claiming under the unrecorded conveyance to the father, it was not necessary for such creditor to prove herein the indebtedness for which the attachment suit was brought.

### Undertaking in lieu of Attachment Bond.

*Held*, under G. S. 1894, § 7989, an undertaking may be given in lieu of an attachment bond.

### Undertaking Defective—Jurisdiction.

The undertaking is defective in failing to incorporate all of the conditions which the statute provides shall be in an attachment bond, as it omits the condition, "if the writ shall be set aside or vacated." The action was commenced by publication of summons. *Held*, the defect in the undertaking is not jurisdictional, and does not render the judgment void.

### Defective Return of Sheriff.

*Held*, the failure of the sheriff, in making his return to the writ of attachment, to state whether or not he had served the writ on the defendant, is not a jurisdictional defect.

Action in the district court for Big Stone county to determine adverse claims to land. The case was tried before C. L. Brown, J., who found that plaintiff was owner of the land subject to the rights of defendant under an execution sale in an undivided one-half of the land. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Henry J. Gjertsen* and *Curtiss Schweigel*, for appellant.

*McLaughlin & Boyesen*, for respondent.

CANTY, J.[1]

On January 13, 1897, plaintiff was the owner of 160 acres of land in Big Stone county. On that day she conveyed it, and several other tracts of land in Minnesota, and in Grant county, South Dakota, to her son, and the deed was duly recorded. Thereupon the son made to his father a deed of the undivided one-half of the 160 acres and of the whole of certain parcels of the Dakota land. This deed is dated January 13,[2] 1897, and was recorded in North Dakota on September 27, 1897, but has never been recorded in Minnesota. The son made another deed, by the terms of which he conveyed back to his mother all the land which she had so conveyed to him. This deed is dated May 24, 1897, and was recorded in Big Stone county, November 8, 1897. This defendant commenced an action against the father, Christian Schweigel, for the recovery of money. A writ of attachment was issued in that action, and on July 5, 1898, his interest in the Big Stone land was levied upon and attached under the writ. Thereafter judgment was obtained in that action, and the land was sold on execution.

This plaintiff brought this action to determine the adverse claims of defendant to this land. Defendant in its answer alleges that, at the time of such attachment, Christian was the owner of the land. The attachment proceedings, judgment, and execution sale are set up, and, by reason thereof, defendant claims a lien on the land. The court found for defendant, and plaintiff appeals from an order denying a new trial.

The plaintiff claims that she deeded the land to her son when she was sick, for the purpose of saving the expense of probating her will in several jurisdictions in case of her death, and that she directed him to make a deed of an undivided one-half of the Big Stone land to his father, and to deliver it to the latter in case of her death, but not to deliver it before. There was considerable testimony given on the trial by plaintiff and her son as to verbal directions which she gave him, when she conveyed the land to him, as to how he should dispose of it. But we have a statute of frauds in this state, and such verbal directions amount to nothing as against the

[1] COLLINS and BUCK, JJ., absent.
[2] See opinion upon reargument, page 150, infra.

defendant. The pivotal question in this case is whether the deed from the son to his father was delivered to the latter before the deed from the son back to his mother was delivered to her. If the deed to the father was first delivered, then he has the title to an undivided one-half of the Big Stone land, although his deed was never recorded in Big Stone county and the deed to the mother was. She is not an innocent purchaser for value.

The son and the father both testified that the deed to the latter was not delivered to him until the fall of 1897, and the son testified that the deed to his mother was delivered to her about July 1, 1897. But there are so many improbabilities and earmarks of untruth in the testimony of plaintiff's witnesses that, in our opinion, the trial court was warranted in refusing to believe the testimony as to the dates of the delivery of these deeds. The deed to the father is dated 10 days before the deed to the mother. The law presumes that a deed is delivered on the day it bears date. 1 Devlin, Deeds, §§ 181, 265. Then, in the absence of proof to the contrary, it would be presumed that the deed to the father was delivered 10 days before the deed to the mother.

Plaintiff testified that she deeded all of this land to her son in order that the latter should sell it. She testified: "I gave it to him at that time simply to sell it for me; that is, at the time I deeded it to him." She further testified that she instructed the son to make the deed to her husband, but that "it was never to be delivered; it was not to be delivered"; and that she afterwards instructed the son to convey all the land back to her. She further testified: "Q. When was the deed to Christian Schweigel delivered? A. I can't remember the time exactly; but Schweigel said that he had a chance to sell the land."

The son, Curtiss Schweigel, is an attorney at law, and was the main witness for the plaintiff. He testified that when his mother conveyed the land to him she directed him to distribute it according to the provisions of a will which she had already made. He further testified:

"A day or so after the conveyance was made she asked me to make a deed of the Dakota land, which had always been in my name, and of an undivided half of this land which is in controversy,

78 M.—10

to Christian Schweigel, and told me to deliver him that deed in case of her death. She also reserved the right to dispose of it otherwise in case she saw fit. She made this conveyance to him, as I understood it from her at the time, that he was to sell the land when opportunity presented itself, and to dispose of the proceeds according to this last will and testament. He was not to have any of the proceeds of the lands that were not conveyed to him, but he was only to have the proceeds of sales resulting from the sale of land that was conveyed in this particular deed, which was the Dakota land, and the undivided half of this land."

He further testified that, in the fall of 1897, his father wrote that he had a buyer for the Dakota land. Witness answered the letter. He further testified:

"In the spring, mother had directed me to make a deed to him of this Dakota land, and also of the undivided half that is involved here; and I told him that he would have to sell the land under that deed, and so I told him I would send him the deed; and I did send him the deed, and told him that he should sell it in that way; and told him, however, that the deed had no effect as a conveyance to himself." He further testified: "Q. Well, why did you make this deed of half interest to him? A. She [his mother] figured that he owned half interest in that land. * * * Q. But you deeded him the whole of the Dakota land? A. I did, because she thought that the Dakota land and the half interest in this property were about half in value of all the property that she possessed."

Although plaintiff testified that she instructed her son not to deliver the deed to his father, and subsequently instructed the son to convey all the land back to her, it is to be inferred from her testimony that she knew what was being done when he delivered the deed to the father. It does not appear that she ever expressed any surprise at this act of the son, or ever asked him why he disobeyed her orders. She knew, also, that her husband wanted the deed in order to sell the Dakota land. It may be inferred from the evidence that she consented to the delivery of the deed to the father. But, whether she so consented or not, the son was, for the purposes of this case, the owner of the land, and he could have conveyed it to his father, whether his mother prohibited the conveyance or consented to it.

The son's testimony is still more unreasonable, and contains a greater number of inherent contradictions. He was not to deliver

the deed to his father until after his mother's death, and in the meantime she reserved the right to dispose of the land; and yet the deed was to be delivered to the father so he could sell the land, and was delivered to him accordingly in the lifetime of the mother, with her knowledge and apparent consent, and he did sell the land. Again, the father was not to have the proceeds of the land after he sold it, although the mother directed the deed of the land to be made to the father, because "she figured that he owed a half interest in that land," and the land described in the deed amounted to about that half interest. Again, according to the testimony of Curtiss Schweigel, he must have been acting in bad faith with his father, and his father's proposed purchaser, by delivering to the father a deed to property which the witness had several months before conveyed back to his mother. It does not appear that he had ever inquired whether his mother had already put her deed on record. If she had, it would bring confusion to the father when he undertook to make a conveyance to his proposed purchaser; and, if she had not, it would annoy and embarrass the father or the proposed purchaser when she did put it on record.

The witness further testified, in substance, that the deed delivered to the father was to amount to nothing as regards the Big Stone land, and was delivered solely to enable the father to dispose of the Dakota land; that witness did not make a separate deed of the Dakota land, because he could not at that time get his wife to join in it. But he admitted, on cross-examination, that he knew at that time that, under the laws of South Dakota, he could convey that land and give a good title without his wife's signature. There are other circumstances, too numerous to mention, which would make the case somewhat more favorable to plaintiff, if the trial court saw fit to give weight to them, and also other circumstances which tend to make the case stronger for defendant. If the deed to the father was first delivered, and was given to him to enable him to sell and convey a part of the land, he was the owner of all the land conveyed by the deed, in spite of any oral instructions or any understanding of the parties to the contrary.

2. Appellant assigns as error the admission in evidence of a certified copy of the record of the deed to the father in the office of

register of deeds in Grant county, South Dakota. The original deed was not introduced in evidence, and whether this certified copy is competent to prove the conveyance of the land in Minnesota we need not consider. It was conclusively proved, by oral evidence received without objection, that the deed was made; that, by its terms, it conveyed the land here in question; and that it was recorded in said office of register of deeds. We are of the opinion that the certified copy was competent to prove the date of the recording of the deed in South Dakota, and that this was material, as proof that the deed was delivered at least as early as the day on which it was recorded.

3. There is evidence showing that Christian Schweigel was indebted to defendant, and the character of the debt is stated, but, as the whole record in the attachment suit brought against him by this defendant is not before the court, we cannot tell whether it is the same indebtedness for which that action was brought. But it was not necessary to prove any such indebtedness, as the attachment creditor in this case is not attempting to impeach or set aside any conveyance, but is simply attempting to stand in the shoes of Christian Schweigel, and claims a title held by him under an unrecorded conveyance.

4. An undertaking, and not a bond, was given in the attachment proceedings. Under G. S. 1894, § 7989, an undertaking is sufficient in such a case. Blake v. Sherman, 12 Minn. 305 (420), arose before the enacting of that section.

5. The undertaking is defective in failing to comply fully with the statute. G. S. 1894, § 5290, provides that an attachment bond shall be conditioned

"That if the defendant recovers judgment, or if the writ shall be set aside or vacated, the plaintiff will pay all costs that may be awarded to the defendant, and all damages that he may sustain by reason of the attachment, not exceeding the penalty of the bond, which shall be at least two hundred and fifty dollars."

The undertaking, after the recitals therein, reads as follows:

"Now, therefore, we  *  *  *  undertake, promise, and agree, to and with the said defendant, that the said plaintiff shall and will pay all costs that may be awarded said defendant, and all damages

he may sustain by reason of the said attachment, not exceeding the sum of two hundred and fifty dollars, in case the said defendant, Christian Schweigel, recover judgment in said action."

It will be observed that this undertaking is defective in failing to add thereto the words, "or the writ shall be set aside or vacated." That action was commenced by serving the summons by publication and without personal service. Therefore, if the attachment proceedings are void, the judgment is void. Appellant contends that such defect in the undertaking is jurisdictional, and the attachment and judgment based thereon are also void. We cannot hold that the defect in the undertaking is jurisdictional or is anything more than an irregularity. It is generally held that a defect in an attachment bond, or even the total want of such a bond, is not jurisdictional, but the defect may be cured by amendment or by furnishing a new bond. Blake v. Sherman, supra; 1 Enc. Pl. & Pr. 683; 1 Shinn, Attachm. § 179. It is true that where the action is in rem, the defendant not being personally served with summons, a defect may be jurisdictional which would not be jurisdictional in a suit in personam. But we cannot hold that, even in an action in rem, the defect here in question is jurisdictional. See Pennoyer v. Neff, 95 U. S. 714.

6. The return of the sheriff to the writ of attachment states that the sheriff levied the writ on the property here in question, but does not state that he served a copy of the writ, and of his return of the attachment of the real estate, on the defendant in that action. Neither does the return state that the defendant could not be found in the county. Conceding, without deciding, that the return is defective for failing to state one or the other of three things, it is a mere irregularity, which does not go to the jurisdiction. Indeed, the judgment in that action is founded on the fact that the defendant therein was not a resident of the state, and could not be found therein, and we must presume that the record in that action shows that fact.

This disposes of all the questions raised having any merit, and the order appealed from is affirmed.

On February 2, 1900, the court rendered the following opinion:

PER CURIAM.

Upon the ground that the decision in the above-entitled action, filed November 22, 1899, was made upon an erroneously assumed state of facts, and that therefore a wrong had been done to plaintiff, a petition for a rehearing was presented by her counsel and granted.

The errors complained of in the statement of facts were as to the date of the deed by which plaintiff conveyed the land in dispute to her son, and as to the tracts of land so conveyed. It was stated in the opinion that the deed bore date January 13, 1897, and also that there was conveyed thereby to plaintiff's son certain land in South Dakota. The fact was that the deed was of date May 13, instead of January 13, and, instead of conveying land in South Dakota, it conveyed lands in North Dakota, as well as several tracts in Minnesota, in addition to the 160 acres in controversy. The mistake in the date of this deed was merely clerical, and of no consequence  Nor was the conclusion of the court in any way affected by the mistake as to the location of the Dakota land. The error led to criticism of the testimony of the son, and the assertion that he had acted in bad faith when he delivered to his father a deed to property which he had previously conveyed to the mother. But these animadversions upon this supposed conduct of the son, whether well founded and perfectly justifiable or not, did not particularly bear upon, or affect our determination of, the pivotal question in the case, as the same was tersely stated in the former opinion. If what was said in reference to the behavior of the son is eliminated and expunged from the opinion,—as it must be, because based upon a misapprehension as to the facts,—we see no good reason for arriving at a different conclusion.

For that reason, the former decision is adhered to.